**Johnny SMITH, Plaintiff-Appellant,**

**v.**

**J. W. FAIRMAN, Warden and Gayle Franzen, Director of the Illinois Department of Corrections, Defendants-Appellees.**

**No. 80–1405.**

United States Court of Appeals, Seventh Circuit.

Submitted April 15, 1982.*

Decided May 14, 1982.

Johnny Smith, pro se.

Vincent W. Moreth, Asst. Atty. Gen., Springfield, Ill., for defendants-appellees.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P. (effective Aug. 1, 1979); Circuit Rule 14(f). Appellant has filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record.

Before PELL, BAUER and ESCHBACH, Circuit Judges.

PER CURIAM.

Plaintiff Johnny Smith, an inmate at Pontiac Correctional Center at Pontiac, Illinois, appeals from the district court's summary judgment dismissing his *pro se* civil rights suit against the warden at Pontiac and the director of the Illinois Department of Corrections. The suit challenges the failure of the defendants to enact rules prohibiting female guards from conducting "frisk"-type searches of male inmates. Frisk searches involve a pat-down of the inmate's outer clothing for the purpose of determining whether he is carrying weapons or contraband. Plaintiff alleged that in conducting such a search, a female guard would place her hands on his neck, back, chest, stomach, waist, buttocks, and the outside of his thighs and legs. He alleged that having female guards conduct such searches was totally unnecessary and was intended to degrade and humiliate male inmates. He claimed that requiring him to submit to such a search constituted cruel and unusual punishment and sought by way of relief an injunction barring the defendants from continuing the practice, and compensatory and punitive damages totalling $40,000.

In response to plaintiff's suit, defendants moved for dismissal or summary judgment. Attached to the motion was an affidavit by the warden of the prison in which he stated that corrections officers are required to search each inmate whenever he enters or leaves an area of the institution that is not under constant supervision. According to the affidavit, female guards do not conduct full searches, but merely pat down the clothing over the inmates' neck, back, stomach, arms and legs. They are given explicit instructions not to search the genital area. In addition, all corrections officers are instructed to conduct these searches in a polite, dignified manner and to avoid degrading or humiliating the inmate.

On the basis of the warden's affidavit, the district court held that plaintiff's claim was not of constitutional magnitude. It noted that the search conducted by female officers was extremely limited and the inmates remained fully clothed. It also noted that the state has a strong interest in avoiding sex discrimination in its hiring practices at the prison. In light of this interest and given the limited scope of the search, the court concluded that allowing female officers to perform the search did not violate plaintiff's constitutional rights. We now affirm.

For our present purposes we will assume that having to endure what is commonly referred to as a frisk or pat-down search could to some persons be a humiliating and degrading experience. Even so limited a search as this "is a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment, and it is not to be taken lightly." *Terry v. Ohio*, 392 U.S. 1, 13, 17, 88 S.Ct. 1868, 1875, 1877, 20 L.Ed.2d 889 (1968). To require one not only to submit to such a search, but to have it performed by a member of the opposite sex could well, for many people, only add to the feeling of degradation. *United States ex rel. Wolfish v. Levi*, 439 F.Supp. 114, 159 (S.D.N.Y.1977), *aff'd*, 573 F.2d 118 (2d Cir. 1978), *rev'd on other grounds sub nom. Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 1865, 60 L.Ed.2d 447 (1979). Rational prison management should recognize this basic fact of human behavior and, where possible, respond accordingly. *Id.*

This is not to say, however, that a pat-down search of a male inmate by a female guard, excluding the genital area, is offensive to the Constitution. It clearly falls short of the kind of shocking, barbarious treatment proscribed by the Eighth Amendment. *See, e.g. Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Whatever constitutional protection an inmate may have against such an intrusion would likely be found, if at all, in the Fourth Amendment guarantee of freedom from unreasonable searches or the more general right of personal privacy which has been recognized as implicit in that Amendment and several others relating to the

guarantee of individual liberty. *Roe v. Wade*, 410 U.S. 113, 152, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). Even under these provisions, however, plaintiff's claim must fail.

■ At the outset, it must be kept in mind that as an inmate of a state prison, plaintiff is not entitled to the full protection of the Constitution he would otherwise enjoy. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948). One of the most important rights which is necessarily limited as a result of one's incarceration is the right to be free of unwanted intrusions into one's personal privacy. *Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir. 1975), *mod. en banc*, 545 F.2d 565 (1976), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). The diminution of this right necessarily follows from the central need of prison authorities to maintain institutional security. Prison officials must be allowed to take reasonable precautions to guard against the smuggling of weapons, drugs or other contraband, the presence of which could pose a serious threat to the safety of corrections personnel and other inmates, or indeed, to the institution itself. Thus, in *Bell v. Wolfish*, 441 U.S. 542, 558–59, 99 S.Ct. 1875, 1884–85 (1979), the Supreme Court held that requiring inmates to submit to so serious an intrusion as body-cavity searches after every contact visit with a person outside the institution did not violate the Fourth Amendment.

In light of this holding, plaintiff clearly has no ground on which he could challenge the mere fact that he was frisked and, indeed, he does not seek to do so. His objection, as previously indicated, is not to being searched, but rather to being searched by a member of the opposite sex. It is this aspect of the search which he allegedly finds particularly degrading and offensive.

In defending their practice of allowing female guards to frisk male inmates, defendants point to the state's obligation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, to avoid discrimination on the basis of sex in its employment of guards. They claim that plaintiff's desire to be searched only by persons of the same sex runs head-on into their obligation to hire and utilize people without regard to their sex.

■ Although the Supreme Court upheld an Alabama policy against employing female guards in contact positions at its male maximum security prisons in *Dothard v. Rawlinson*, 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977), the Court's holding rested entirely upon the uniquely dangerous conditions within that state's prisons and the fact that a substantial portion of the general inmate population was composed of sex offenders. It thus appears that in the absence of those conditions, a state may not legally refuse to hire women as guards in a male prison. *See Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079 (8th Cir.), *cert. denied*, 446 U.S. 966, 100 S.Ct. 2942, 64 L.Ed.2d 825 (1980). If a state is required to hire women as guards in its male prisons, it reasonably seems to follow that it must be allowed to utilize female guards to the fullest extent possible.

This does not mean, however, that inmates are without constitutional protection against invasions of their privacy by members of the opposite sex. In *Forts v. Ward*, 471 F.Supp. 1095 (S.D.N.Y.1979), *vacated in part*, 621 F.2d 1210 (2d Cir. 1980), the court upheld a claim by female inmates of a maximum security facility that surveillance over them by male guards while they were in a state of undress, using toilet facilities, showering or sleeping violated their constitutional right of privacy. Although the court expressly recognized the right of males to equal job opportunity within the prison, it concluded on the facts before it that that right "must in some measure give way to the right of privacy." 471 F.Supp. at 1099. It therefore ordered that adjustments be made either in scheduling of male

guards or in the physical structure of the facilities to protect the women inmates from male surveillance while they were dressing or undressing, showering, using the toilet facilities, or sleeping in the housing units.

Other courts have reached essentially the same conclusion. While recognizing the right of one sex not to be discriminated against in job opportunities within the prison because of their gender, they have also concluded that inmates do have some right to avoid unwanted intrusions by persons of the opposite sex. The resulting conflict between these two interests has normally been resolved by attempting to accommodate both interests through adjustments in scheduling and job responsibilities for the guards. *See e.g. Gunther*, 612 F.2d 1079; *Bowling v. Enomoto*, 514 F.Supp. 201 (N.D. Cal.1981); *Hudson v. Goodlander*, 494 F.Supp. 890 (D.Md.1980); *United States ex rel. Wolfish*, 439 F.Supp. at 159–60; *Reynolds v. Wise*, 375 F.Supp. 145, 151 (N.D.Tex. 1974); *Sterling v. Cupp*, 290 Or. 611, 625 P.2d 123 (1981); *see generally* Comment, Sex Discrimination in Prison Employment: The Bona Fide Occupational Qualification and Prisoners' Privacy Rights, 65 Iowa L.Rev. 428 (1980).

This is precisely what Illinois has attempted to do here. By limiting the nature and scope of the search female guards are allowed to conduct on male inmates, it has sought to accommodate the right of women to equal employment opportunities with the male inmates' right to privacy. The crucial question is whether in attempting to reconcile these interests, it has failed to allow plaintiff the full amount of privacy to which he is constitutionally entitled. We hold that it has not.

In the case factually closest to the one now before us, the Supreme Court of Oregon upheld on state constitutional grounds a claim by male inmates of that state's prison that requiring them to submit to frisks by female guards violated their right to personal privacy. *Sterling v. Cupp*, 290 Or. 611, 625 P.2d 123 (1981). *Sterling* differs from this case, however, in that the searches complained of were not limited in their scope. In *Sterling*, the female guards conducted a full frisk of the male inmates, including their genital and anal areas. It was the examination by female guards of these areas, referred to by the court as the "final bastion of privacy" on the human body, 625 P.2d at 132, that was found to be in violation of the state constitution. In granting relief, the court enjoined the women guards not from frisking the male inmates altogether, but only from searching these areas. 625 P.2d at 137.

We think that by instructing female guards to exclude the genital area on male inmates in conducting a frisk, defendants have afforded plaintiff whatever privacy right he may be entitled to in this context. While plaintiff evidently finds even this limited touching by a person of the opposite sex to be offensive, we do not read the Constitution so broadly. As Judge Frankel aptly noted in *United States ex rel. Wolfish v. Levi* :

> [this] subject lies ... in a sector of the community's mores where the state of flux is uniquely notable.
>
>   *   *   *   *   *   *
>
> In the last analysis ... the overriding facts may well be the phenomena of uncertainty and change. And these counsel a tentative and gingerly approach by the judges. The community's standards are obviously prime concerns in deciding how to regulate contacts, relationships, and exercises of authority between people of opposite sexes. Judges are not by office or training specially qualified as the regulators.

439 F.Supp. at 159–60.

We conclude that requiring plaintiff to submit to a limited frisk-type search by a female guard infringes upon no right guaranteed by the Constitution. The district court's judgment dismissing his suit is therefore affirmed.