Muriel E. KAUFFMAN,
Plaintiff-Appellee,

v.

SIDEREAL CORPORATION, an Oregon corporation, Defendant-Appellant.

No. 80–3232.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1981.

Decided May 19, 1982.

As Amended Jan. 3, 1983.

Mildred J. Carmack, Schwabe, William-son, Wyatt, Moore & Roberts, Portland, Or., for defendant-appellant.

J. Bradford Shiley, Portland, Or., for plaintiff-appellee.

Before GOODWIN and FLETCHER, Circuit Judges, and ROBERT McNICHOLS,* District Judge.

## PER CURIAM:

Appellee Kauffman brought this action against her former employer, Sidereal Corporation (Sidereal), a small computerized communications manufacturer. The only claim remaining at trial alleged unlawful retaliation by the employer in response to Kauffman's filing of a sex discrimination complaint with the Equal Employment Opportunity Commission (EEOC). The matter was tried to the court and a judgment was rendered for Kauffman. In awarding damages, the trial court held that unemployment benefits should not be deducted from the backpay award. Kauffman received a judgment of $9,667.70 for backpay and $6,526.00 in attorneys fees. We affirm.

## I.

### FACTS

Kauffman was hired as a prototyper by Sidereal in July of 1977. Her direct supervisor was a Mr. Kilgore. During the first year of her employment she received several periodic pay increases and favorable performance reviews. However, in August of 1978, shortly after Kauffman had complained in writing to management of discriminatory treatment by Kilgore, Kilgore placed a notation in Kauffman's file that her attitude needed improvement. On September 22, 1978, Kauffman notified Sidereal that she was filing a discrimination complaint with the EEOC, and on November 22, 1978, Sidereal received formal notice of

---

* Honorable Robert J. McNichols, Chief Judge, Eastern District of Washington, sitting by des-

these filings. After Sidereal became aware of the EEOC complaint, several notations were entered in Kauffman's file reflecting dissatisfaction with her, centering mainly on Kauffman's conduct in connection with a five-week medical leave of absence which began on November 16, 1978. One notation, however, stated that Kauffman had been difficult to work with "from the first." Kauffman was terminated on January 8, 1979 for "willful disinterest in contacting management during her five-week absence."

## II.

### ISSUES

A. Was the trial court's finding that appellee was terminated unlawfully in retaliation for having filed a sex discrimination complaint clearly erroneous?

B. In awarding a prevailing plaintiff damages in the form of backpay for retaliatory discharge, is the court required to offset the amount of unemployment compensation received by the plaintiff during the time covered by the backpay award?

## III.

### DISCUSSION

#### A. Finding of Retaliation

It is a violation of Title VII of the Civil Rights Act for an employer to discriminate against any employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3 (1976). The burdens of persuasion and proof to establish a violation of section 2000e–3(a) are the same as those set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). As this Court has stated:

ignation.

A showing by plaintiff that he was discharged following protected activities of which the employer was aware establishes a prima facie case of retaliatory dismissal. The burden then shifts to the employer to show legitimate nondiscriminatory reasons for the dismissal. If the employer makes such a showing, the employee then must be afforded a fair opportunity to show that the asserted reasons are in fact pretext.

*Aguirre v. Chula Vista Sanitary Service,* 542 F.2d 779, 781 (9th Cir. 1976) (citing *McDonnell Douglas); accord, Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir. 1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).

■ While the burden clearly rests with the plaintiff to prove causation, the courts have applied several different standards requiring either that the protected activity played some part (ranging from remote to dominant) in the decision to discharge, or that the discharge would not have occurred but for the protected activity. *E.g. Goodwin v. City of Pittsburg,* 480 F.Supp. 627, 634 (W.D.Pa.1979); *Sutton v. National Distillers Products Co.,* 445 F.Supp. 1319, 1327–28 (S.D.Ohio 1978); *Taylor v. Franklin Drapery Co.,* 441 F.Supp. 279, 298 (W.D.Mo. 1977); *cf. Loeb v. Textron, Inc.,* 600 F.2d 1003, 1019 (1st Cir. 1979) (retaliation claim under the Age Discrimination in Employment Act). The better formulation of the rule and the one which we adopt for future guidance, is the "but for" test. Under this test, it must be established by a preponderance of the evidence that engaging in the protected activity was one of the reasons for the firing and that but for such activity the plaintiff would not have been fired. *See McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n.10, 49 L.Ed.2d 493 (1976); *De Anda v. St. Joseph Hospital,* 671 F.2d 850, No. 80–1639, slip op. at 1582, 1590 n. 12 (5th Cir. Mar. 3, 1982).

■ In the instant case, Kauffman clearly established a prima facie case. The employer was afforded an opportunity to give nondiscriminatory reasons for the discharge. After hearing all of the evidence, the trial court concluded that regardless of which causation standard was applied the preponderance of the evidence favored plaintiff's position. To reach this conclusion, the trial judge relied first and foremost on the testimony of Kilgore, plaintiff's supervisor. In his deposition Kilgore testified as follows:

Q. Part of the problem had to do with her complaint in the sex discrimination case?

A. That's one of many, yes.

Q. And that entered into your decision to terminate her, didn't it, Mr. Kilgore?

A. That was one.

Essentially the same question was repeated three more times during Kilgore's deposition, and each time his answer was in the affirmative. Moreover, similar testimony was elicited from Kilgore at trial:

Q. The fact that Miss Kauffman filed charges of sex discrimination against Sidereal was one of the motivating factors in her discharge from the company, wasn't it?

A. That was one of them, yes.

Q. And you discussed that fact with Mr. Zapp and Mr. Schembs and this was the position of all three of you? That was one of the motivating factors for all three of you, wasn't it?

A. Yes.

The court also considered testimony of another officer of Sidereal, Mr. Zapp, who admitted to a change in the company's attitude towards Kauffman after she charged the company with discriminatory practices. Finally, the rather abrupt shift in the tenor of the notations made in Kauffman's employment file also bear out this apparent change in attitude.

We agree with the district court that there is sufficient evidence in the record to support a finding that but for the employer's retaliatory conduct, plaintiff would not have lost her job. The trial court heard the testimony, observed the demeanor of the witnesses and viewed the exhibits. We will not substitute our judgment unless the

findings of the trial judge are clearly erroneous. Fed.R.Civ.P. 52(a); *World Airways, Inc. v. International Brotherhood of Teamsters*, 578 F.2d 800, 802 (9th Cir. 1978). Based on the record before us, the finding of retaliation was not clearly erroneous. The trial court's finding, that retaliation improperly resulted in plaintiff's discharge, will not be disturbed.

## B. *Offset of Unemployment Benefits*

■ The second issue raised by Sidereal has not been addressed by this Court previously. The trial court, after noting a divergence in the rulings of several other courts that have faced the issue, concluded that unemployment benefits should not be offset from Kauffman's award.[1]

The backpay remedy in a Title VII case is authorized by 42 U.S.C. § 2000e–5(g) (1976), which provides in part:

> Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

The legislative history behind this provision is not enlightening in ascertaining whether Congress intended that unemployment benefits be deducted. The only reported decision to enunciate reasons in support of such a deduction is *Equal Employment Opportu-*

*nity Commission v. Enterprise Association Steamfitters Local 638*, 542 F.2d 579, 591–92 (2d Cir.), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1976). Those reasons can be summarized as follows: 1) Where the contributions to the fund from which the benefits derive are made solely by the defendant, the collateral source rule does not apply; 2) The plaintiff would otherwise receive a double recovery; and 3) The defendant would otherwise in effect be subjected to punitive damages.

The United States Supreme Court explicitly rejected this reasoning in a decision upholding the National Labor Relations Board's refusal to deduct unemployment benefits from an employee's backpay award for discriminatory discharge.

> To decline to deduct state unemployment compensation benefits in computing back pay is not to make the employees more than whole, as contended by respondent. Since no consideration has been given or should be given to collateral *losses* in framing an order to reimburse employees for their lost earnings, manifestly no consideration need be given to collateral benefits which employees may have received.
>
> But respondent argues that the benefits paid from the Louisiana Unemployment Compensation Fund were not collateral but direct benefits. With this the-

1. Denying deduction: *Abron v. Black & Decker Mfg. Co.*, 439 F.Supp. 1095 (D.Md.1977); *Inda v. United Airlines, Inc.*, 405 F.Supp. 426 (N.D. Cal.1975), *modified on other grounds*, 565 F.2d 554 (9th Cir. 1977), *cert. denied*, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978); *Tidwell v. American Oil Co.*, 332 F.Supp. 424 (D.Utah 1971). Allowing deduction: *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43 (2d Cir. 1980); *EEOC v. Enterprise Association Steamfitters*, 542 F.2d 579 (2d Cir. 1976), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588; *Satty v. Nashville Gas Co.*, 522 F.2d 850 (6th Cir. 1975); *Bowe v. Colgate-Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969); *Heelan v. Johns-Manville Corp.*, 451 F.Supp. 1382 (D.Colo.1978); *Bradford v. Sloan Paper Co.*, 383 F.Supp. 1157 (N.D. Ala.1974); *Diaz v. Pan American World Airways, Inc.*, 346 F.Supp. 1301, *amended*, 348 F.Supp. 1083 (S.D.Fla.1972).

In *Naton v. Bank of California*, 649 F.2d 691 (9th Cir. 1981), a case involving a similar ques-

tion but arising under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, we stated:

> [w]e need not decide whether the collateral source rule applies in this case, because we hold that even if the district court was authorized to treat the unemployment compensation as a collateral benefit, it retained the discretion under the ADEA to deduct the compensation from the backpay award.

*Id.* at 700. While *Naton* does not involve a claim under Title VII, this court applies the same basic standards to both Title VII and ADEA claims. *See Douglas v. Anderson*, 656 F.2d 528, 531 (9th Cir. 1981); *Kelly v. American Standard*, 640 F.2d 974, 984 (9th Cir. 1981). However, even if we apply the reasoning of *Naton* to the instant case, it is of no avail to the appellant because it leaves open the precise question we face today, whether unemployment compensation is a collateral source.

ory we are unable to agree. Payments of unemployment compensation were not made to the employees by respondent but by the state out of state funds derived from taxation. True, these taxes were paid by employers, and thus to some extent respondent helped to create the fund. However, the payments to the employees were not made to discharge any liability or obligation of respondent, but to carry out a policy of social betterment for the benefit of the entire state.... We think these facts plainly show the benefits to be collateral.

*National Labor Relations Board v. Gullett Gin Co.,* 340 U.S. 361, 364, 71 S.Ct. 337, 339–40, 95 L.Ed. 337 (1951) (citations omitted). We find the reasoning of *Gullett Gin* persuasive because on another occasion the Supreme Court stated that the backpay provision of Title VII "was expressly modeled on the backpay provision of the National Labor Relations Act." *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 419, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975) (footnote omitted). The trial judge in this case expressed two additional considerations in not offsetting the benefits. First, if Congress did not intend for an employee to receive unemployment benefits in addition to back pay the logical solution is a recoupment of the unemployment benefits by the state employment agency. Second, because section 2000e–5(g) requires deduction of "amounts earnable with reasonable diligence," disallowance of an offset does not have the detrimental effect of discouraging discharged employees from seeking other work.

We are persuaded by the reasoning of both *Gullett Gin* and the trial judge and accordingly hold that unemployment benefits received by a successful plaintiff in an employment discrimination action are not offsets against a backpay award.[2]

---

**2.** In *Gullet Gin,* as here, the plaintiff received unemployment pay from a state fund supported by a tax on employers. We, therefore, have no occasion to decide today whether the collateral source rule would be equally applicable to un-

IV.

CONCLUSION

The judgment of the trial court is affirmed and the case is remanded for determination of the amount of costs and attorney's fees to be awarded on appeal.

employment compensation benefits funded directly by the plaintiff's employer. *See Naton v. Bank of California,* 649 F.2d 691, 699–700 (9th Cir. 1981) *discussed in* note 1 *supra.*