**Tung PEREIRA, Plaintiff,**

v.

**SCHLAGE ELECTRONICS, et al. Defendants.**

**No. C–93–20513 SW.**

United States District Court, N.D. California.

Aug. 11, 1995.

William Woodson, Palo Alto, CA, for plaintiff.

William Harris, Oakland, CA, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SCHLAGE'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

SPENCER WILLIAMS, District Judge.

Plaintiff Tung Pereira ("Pereira") brought this action against her employer, Defendant Schlage Electronics ("Schlage"), and several of her co-workers, alleging that she was discriminated against on the basis of her sex in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and California Gov't Code § 12940. Currently before the Court are the parties' cross-motions for summary judgment.

## BACKGROUND

Pereira began working for Schlage in 1988 as a temporary employee in the printed circuit board "quality assurance" department. After approximately six months, she was given regular employment and transferred to the production test department. In both her 1988 and 1989 performance reviews, Pereira received a performance rating of "commendable" overall, the second highest possible rating out of five.

Pereira alleges that throughout her employment at Schlage three of her co-workers, Ban "Tony" Nguyen, Dung Tran and Sum Diep, harassed her with abusive, vulgar and offensive language spoken in Vietnamese. Initially, Pereira did not complain about the language because she only had to work directly with these three individuals on sporadic occasions.

However, in mid–1990, the departments in which Pereira and her alleged harassers worked were consolidated. Because Pereira could not stand the constant foul and abusive language on an everyday basis, she alleges that she complained to her supervisor, Bob Stanley, on August 28, 1990. According to Pereira, Stanley responded that unless the offensive language was spoken in English there was nothing he could do about it.

The same day that Pereira complained to Stanley, he allegedly gave her a difficult job assignment that was outside of her job duties. According to Pereira, Stanley ordered her to tear open a plastic sealed sensor box with her bare hands. When she could not do it, she invited Stanley to try himself; he failed as well. Stanley denies that he ever met with Pereira during August or that he gave her an inappropriate work assignment.

Two days later, on August 30, 1990, Stanley gave Pereira a verbal warning for not performing her job duties adequately. He also allegedly accused Pereira of being drunk and drugged on the job. Stanley followed up with a written warning on August 31, 1990, and then a poor performance evaluation in October of 1990 in which Pereira's performance rating dropped three levels to "satisfactory growth," the second lowest possible.

From the end of August until December, Pereira made no further complaints and simply ignored her co-worker's language. However, on December 8, 1990, Pereira claims that Ban Ngyuen and Dung Tran made particularly offensive comments about shopping for prostitutes. Ban Ngyuen allegedly said that he wanted to go to San Francisco and find "a tall lady, skinny, who was no fun, and had no boobs or nothing" who he would pay to have sex with him. The following Monday, December 12, 1990, these same men referred to Pereira as "the tall lady" and the "tiny, skinny lady." Ban Ngyuen also allegedly talked about wanting to have sex with Pereira, and asked her to go to bed with him.

Later that day, Pereira again complained to a supervisor, Kathy Jaramillo, about her co-workers' conduct. Jaramillo said that she would look into the problem.

The next day, Pereira alleges that Tran and Ban confronted her and angrily threatened to kill her and her family if she continued to complain about their language. According to Pereira, the men said they would burn down her house and that they would kidnap her and leave her "in a Black neighborhood so people can rape and kill [her]." Tran also allegedly tried to intimidate Pereira by bragging about his previous time in jail and saying that he was not afraid to go back.

Pereira immediately filed a report with the Santa Clara County Police Department regarding these threats. Pereira also wrote two memos to Schlage's head of human relations, Judy Miller, on December 14, 1990 and February 14, 1991, about the threats and continued foul language. According to Pereira, her co-workers' language did not abate.

Pereira alleges that Schlage also damaged her relationships with her co-workers by falsely accusing her of stealing tools, taking work away from co-workers, and "a variety of other false and petty offenses." Schlage asserts that Pereira's problems with her co-workers resulted from her own difficult personality and her refusal to abide by company rules. In any case, when Pereira met with Kathy Jaramillo on March 11, 1991 to discuss these problems, Jaramillo allegedly told her that she was "crazy", that no one at the company believed anything she said, and that she should find work elsewhere.

Pereira filed a complaint with the Office of Federal Contract Compliance Programs ("OFCCP") on March 14, 1991. That same day, Schlage placed Pereira on disciplinary probation. Thereafter, on April 11, 1991, Pereira filed a complaint with the Equal Employment Opportunity Commission ("EEOC").

On June 21, 1991, Schlage's head of human relations, Jo Ann Balesano, called Pereira into her office and informed her that her employment was terminated for "misconduct."

Pereira filed another complaint with the EEOC on July 2, 1991. Ultimately, on April 15, 1993, the EEOC found that "there is reasonable cause to infer that [Pereira] and other female employees were subjected to sexual harassment and a discriminatory work environment in violation of Title VII." The EEOC also determined that "there is reasonable cause to believe that [Pereira] and other female employees [at Schlage] who complain about sexual harassment are subjected to retaliation in violation of Title VII." Finally, the EEOC stated that "there is reasonable cause to believe that [Schlage] retaliated against [Pereira] in violation of Title VII of the Civil Rights Act of 1964 ... when it discharged [Pereira]."

Pereira filed suit in this Court on July 19, 1993. She alleges sexual discrimination and retaliatory discharge under Title VII, 42 U.S.C. 2000e, *et seq.* and California Gov't Code § 12940. She requests a jury trial and seeks compensatory damages for emotional distress and lost wages and benefits, equitable relief in the form of reinstatement or front pay, punitive damages, and attorney's fees.

## LEGAL STANDARD

A party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party must demonstrate that no genuine issue of material fact exists for trial. *Id.* at 322, 106 S.Ct. at 2552. However, the moving party is not required to *negate* those portions of the nonmoving party's claim on which the nonmoving party bears the burden of proof. *Id.*

Once the moving party demonstrates that there is no genuine issue of material fact, the nonmoving party must designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

The adjudication of a summary judgment motion is not a "trial on affidavits." *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Credibility determinations and weighing of the evidence are solely jury functions. *Id.* at 255, 106 S.Ct. at 2513. Inferences drawn from underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

However, there may be no genuine issue of material fact if "the evidence is of insufficient caliber or quantity to allow a rational finder of fact" to find for the nonmoving party. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513. And in some circumstances the factual context may render the nonmoving party's claim implausible, and the nonmoving party must come forward with "more persuasive evidence" to support the claim "than would otherwise be necessary." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

## DISCUSSION

### I. *PEREIRA'S TITLE VII CLAIMS*

#### A. *Hostile Work Environment*

In Pereira's Opposition and Cross–Motion for Summary Judgment, she states that she intends to pursue her hostile working environment claim solely under California law. Therefore, the Court GRANTS Schlage's motion for summary judgment on Pereira's Title VII claim for hostile working environment.

#### B. *Retaliation*

 To make out a prima facie case of retaliation, Pereira must establish that she acted to protect her Title VII rights, that Schlage thereafter took an employment action against her, and that a causal link exists between these two events. *Jordan v. Clark,* 847 F.2d 1368, 1376 (9th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989). If Pereira does so, the burden then shifts to Schlage to advance legitimate, non-retaliatory reasons for firing

her. *Steiner v. Showboat,* 25 F.3d 1459, 1464–65 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995). Thereafter, Pereira can still prevail if she can demonstrate that Schlage's proffered reasons were pretexts for other motives that were discriminatory. *Lowe v. City of Monrovia,* 775 F.2d 998, 1007 (9th Cir.1985).

 The parties do not strenuously dispute the first two prongs of the foregoing legal standard: that Pereira has made out a prima facie case of discrimination or that Schlage has advanced legitimate, non-retaliatory reasons for her termination. Pereira has provided sufficient evidence that she complained repeatedly about sexual harassment, that she was thereafter fired, and that there was a nexus between her complaints and her termination. *See* Pereira Dec., Ex. 5, 6.5, 7, 9, 11. In response, Schlage has submitted evidence that Pereira's termination actually resulted from her inability to get along with her co-workers and from her commission of several acts of misconduct including stealing her co-worker's tools and misappropriating other employees' work. *See* Stanley Dec. at 3–4, 7–11; Ordonio Dec. at 2–3, Ex. A.

 The real issue here, therefore, is whether Pereira has submitted adequate evidence of pretext. To prevail on this prong, Pereira must demonstrate: 1) that the reasons stated by Schlage were false and; 2) that discrimination was Schlage's actual reason for terminating Pereira. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). Pereira must produce " 'specific substantial evidence of pretext.' " *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 890 (9th Cir.1994) (quoting *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983)). Proof that merely refutes the employer's legitimate nondiscriminatory reason will not defeat summary judgment. *See Schuler v. Chronicle Broadcasting Co., Inc.,* 793 F.2d 1010, 1011 (9th Cir. 1986).

Here, Pereira has introduced the following evidence that Schlage's proffered reasons for firing her were false. First, Pereira asserts in her declaration that she never committed

the acts of misconduct of which she was accused. Pereira Dec. at 9. Pereira supports this assertion with a memo she wrote to Judy Miller on March 13, 1991 explaining her version of what actually happened. Pereira Dec., Ex. 8. According to Pereira, she was merely following orders when she took work from another employee, and she was merely recovering her own tool when she took it from a co-worker's toolbox. Pereira Dec, Ex. 8. Second, Pereira asserts that any problems she had in getting along with her co-workers resulted from Schlage's own efforts to turn its employees against her, not from her personality or demeanor. Pereira Dec. at 9. As supporting evidence, Pereira has submitted a birthday card signed by many of her co-workers in September of 1989, prior to her complaining of sexual harassment, in which they express friendly birthday wishes. Pereira Dec., Ex. 1.

To demonstrate that Schlage's motives were actually discriminatory, Pereira refers to the chronology of events that took place. According to Pereira, this chronology demonstrates that Schlage made retaliatory employment decisions on several occasions following her complaints of sexual harassment. For example, Pereira asserts that immediately after she told Bob Stanley about her co-workers' offensive language on August 28, 1990, he gave her an inappropriate work assignment and then wrote her up for failure to perform her job duties. Pereira Dec. at 3–5. Pereira also argues that her filing of OFCCP and EEOC complaints on March 14, 1991 and April 11, 1991 preceded her being placed on probation on March 14, 1991 and ultimately fired on June 21, 1991. Furthermore, as direct evidence of discriminatory motive, Pereira alleges that when she complained to Kathy Jaramillo about harassment on March 11, 1991, Jaramillo called her "crazy," told her that she should find work elsewhere, and said that "no one in the company believe[d her] about anything." Pereira Dec. at 10. This conversation suggests that Schlage's real reason for terminating Pereira was related to her repeated complaints about harassment.

After reviewing the evidence, the Court finds that Pereira has created several issues of material fact as to whether Schlage's proffered reasons for firing her were pretextual. For example, what happened between Pereira and Stanley in late August is clearly still in dispute. Pereira alleges that she met with him and he ignored her complaints; Stanley denies that any meeting took place. The circumstances of Pereira's March 1991 meeting with Jaramillo are also at issue. Even more importantly, there are unresolved issues of fact as to whether Pereira committed misconduct when she took other employees' work and tools.

Therefore, the Court DENIES summary judgment on Pereira's retaliation claim.

## II. PEREIRA'S STATE LAW CLAIMS UNDER CAL. GOV'T CODE § 12940

### A. Hostile Working Environment

To state a claim under California law for environmental sexual harassment based on a hostile working environment, Pereira must show: 1) that she belongs to a protected group; 2) that she was subjected to unwelcome sexual harassment; 3) that the harassment was based on sex; 4) that the harassment was sufficiently pervasive so as to alter the conditions of employment and create a hostile working environment; and 5) respondeat superior. *Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App.3d 590, 608, 262 Cal.Rptr. 842, 851–52 (1989). As under federal law, there are two prongs of a hostile working environment claim under Cal. Gov't Code § 12940: 1) whether a reasonable woman would find that her co-workers' conduct was sufficiently severe or pervasive enough to alter the conditions of her employment and create an abusive working environment; and 2) whether Schlage, once apprised of the harassment, failed to take adequate remedial and disciplinary action. *See Ellison v. Brady*, 924 F.2d 872, 879, 881–83 (9th Cir.1991); *Steiner*, 25 F.3d at 1462–63.

#### 1. Severity and Pervasiveness of the Harassment

Whether harassment is sufficiently pervasive to create a hostile or offensive work environment must be determined from the totality of the circumstances. *Fish-*

*er,* 214 Cal.App.3d at 608, 262 Cal.Rptr. at 852. The factors that may be considered in evaluating these circumstances are: "1) the nature of the unwelcome sexual acts or works (generally, physical touching is more offensive than unwelcome verbal abuse); 2) the frequency of the offensive encounters; 3) the total number of days over which all of the offensive conduct occurs; and 4) the context in which the sexually harassing conduct occurred." *Id.*

To be actionable, the harassment cannot be "occasional, isolated, sporadic, or trivial." *Id.* Rather, the plaintiff must show a concerted pattern of harassment of a "repeated, routine or generalized nature." *Id.* However, harassment need not be directed specifically at the plaintiff in order for her to prevail on a claim for a hostile working environment: one who is not personally subjected to offensive remarks or touchings of a sexual nature may still recover if she establishes "that she personally witnessed the harassing conduct and that it [took place] in her immediate work environment." *Id.* at 611, 262 Cal.Rptr. at 853.

Here, Pereira alleges in her declaration that she was subjected to foul, offensive and sexually explicit language on a daily basis for over ten months. Pereira Dec. at 3, 5–8, 11–13. Pereira's declaration is supported by her notes and the tape transcript of conversations between her co-workers in which such language is used repeatedly. Pereira Dec., Ex. 12, 13. On this tape, Pereira's co-workers engage in bizarre sexual conversations and sing lewd songs in Vietnamese. For example, at one point, one of the co-worker's says, "Mother Fucker, when it's fully aroused it looks like a boa ... a boa head ... the boa head rises fearfully ... she will cry of pleasure." Tanh Tran Dec. at 2. At another point, the same person says, "Fuck a man today, fuck another tomorrow. In the beginning, talk sweet, after the fucking, then things will be OK?" Tanh Tran Dec. at 2.

Pereira also claims that on several occasions comments of a sexual nature were directed specifically at her, including remarks by her co-workers about wanting to have sex with a prostitute who looks like Pereira, and

a request by one of these men that Pereira "go to bed" with him. Pereira Dec. at 5–6. Pereira further asserts that when she complained about her co-workers' harassment, she was subjected to death threats and other more subtle forms of retaliation. Pereira Dec. at 7, 9.

In response, Schlage argues that Pereira was at most subjected to isolated incidents of "locker room" talk which was not directed specifically at her. To support this assertion, Schlage submits two identical boilerplate declarations from Pereira's co-workers in which they deny that they ever directed offensive language at Pereira or made death threats towards her. *See* Ban Ngyuen Dec. at 2; Dung Khac Tran Dec. at 2. Notably, neither co-worker denies using repeated foul and offensive language.

After reviewing the supporting and opposing evidence, the Court finds that issues of material fact remain as to whether sexual harassment was directed at Pereira and whether it was sufficiently severe or pervasive to constitute a hostile working environment. If a jury were to believe Pereira's version of the facts, it could reasonably find that she was subjected to sufficiently severe and pervasive harassment to alter the conditions of her employment. Therefore, the Court cannot rule as a matter of law that Pereira's co-worker's conduct did not create a hostile working environment.

### 2. *Remedial Measures*

Under California law, the employer is "strictly liable for the harassing conduct of its agents and supervisors," *Fisher,* 214 Cal. App.3d at 608 n. 6, 262 Cal.Rptr. at 851 n. 6 (citing *DFEH v. Bee Hive Answering Serv.,* FEHC No. 84–16 at 18 (1984)), and is liable for co-worker harassment where it, or its agents or supervisors, "knows or should have known of this conduct and fails to take immediate and appropriate corrective action." *Id.* (citing *DFEH v. Madera County,* FEHC No. 88–11 at 22 (1988)).

Once apprised of harassing conduct, an employer's remedy should be "immediate and appropriate," 29 C.F.R. § 1604.11(d), and "reasonably calculated to

end the harassment." *Ellison,* 924 F.2d at 881–82. Obviously, not all harassment warrants dismissal of the harasser. *Id.* (citing *Barrett v. Omaha Nat. Bank,* 726 F.2d 424, 427 (8th Cir.1984)). Rather, the remedy should be "assessed proportionately to the seriousness of the offense." *Id.* (citing *Dornhecker v. Malibu Grand Prix Corp.,* 828 F.2d 307, 309 (5th Cir.1987)). In essence, the reasonableness of a remedy depends on its effectiveness in ending the harassment. *Id.* at 882.

 Here, there is no dispute that Schlage knew of the alleged harassment of Pereira through Pereira's own repeated complaints. Schlage does, however, claim that after each of Pereira's complaints it investigated and counseled and/or warned the employees alleged to have harassed Pereira. According to Schlage, Pereira's accusations were simply never substantiated by any other evidence uncovered in their investigations.

In response, Pereira claims that her complaints were repeatedly ignored and/or dismissed. For example, according to Pereira, Bob Stanley said he could do nothing about her co-workers' language unless it was spoken in English. Pereira Dec. at 4. Furthermore, during one conversation, Kathy Jaramillo allegedly told Pereira that her accusations were "crazy". Pereira Dec. at 10. It is also undisputed that Schlage never attempted to institute formal disciplinary action against any of Pereira's alleged harassers or to transfer them to a different department where they would not come into contact with Pereira.

Therefore, issues of genuine fact remain as to whether Schlage's investigations, counseling, and warnings were sufficient remedial actions to excuse Schlage from liability.

B. *Retaliation*

 Although the language of Title VII and Cal. Gov't Code § 12940 differs slightly, their "antidiscriminatory objectives and the overriding public policy purposes are identical and [courts] refer to ... federal decisions where appropriate." *County of Alameda v. Fair Employment & Housing Commission,* 153 Cal.App.3d 499, 504, 200 Cal.Rptr. 381

(1984). The same issues of fact that remain on Pereira's federal claim for retaliation are applicable to her state law claim as well. Therefore summary judgment is not appropriate on this claim either.

## CONCLUSION

Based on the foregoing, Schlage's motion for summary judgment is GRANTED on Pereira's Title VII claim for hostile working environment, and DENIED on her Title VII claim for retaliation and her state law claims for both hostile working environment and retaliation. Pereira's cross-motion for summary judgment is DENIED.

Schlage has also made a motion to continue the trial date. Accordingly, the trial date is vacated and new dates will be set by the Court.

IT IS SO ORDERED.