[No. C018589. Third Dist. Jan. 26, 1995.]

PENNE M. PAGE, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
3NET SYSTEMS, INC., et al., Real Parties in Interest.

## COUNSEL

Christopher H. Whelan for Petitioner.

No appearance for Respondent.

Matheny, Poidmore & Sears, Michael A. Bishop, Daryl M. Thomas, Downey, Brand, Seymour & Rohwer, Judy H. Hersher, Barbara A. Morris and Robert G. Strauch for Real Parties in Interest.

## OPINION

**PUGLIA, P. J.**—Petitioner (plaintiff) seeks a writ of mandate directing the respondent superior court to vacate its order sustaining without leave to amend the demurrer of real party in interest Dennis Montgomery (Montgomery) to the first cause of action of plaintiff's second amended complaint, and to enter an order overruling the demurrer. At issue is whether a supervisor can be held personally liable for sexual harassment of and retaliation against an employee in violation of the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.; further statutory references to sections of an undesignated code are to the Government Code.). We shall conclude a supervisor is a "person" subject to liability under FEHA.

I

The facts are taken from the material allegations of fact in plaintiff's second amended complaint. █ In reviewing the sufficiency of a complaint against a demurrer, all material facts are deemed admitted. If the material facts show the plaintiff is entitled to any relief, the complaint will be held sufficient. (See, e.g., *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137].)

Real party in interest 3NET Systems, Inc. (3NET), hired plaintiff in March 1990 as an assistant controller. Plaintiff was terminated on March 17,

1993. At that time, plaintiff worked as a research specialist. During plaintiff's employment, Montgomery was plaintiff's supervisor, the vice-president of 3NET and the owner of an interest in the corporation. Real party in interest William Manak (Manak) was the corporation's president and chief executive officer. Manak also owned an interest in the corporation.

On many occasions during plaintiff's employment, Montgomery asked plaintiff to orally copulate him. During the last six months of her employment, plaintiff was required to travel to jobsites in the United States and Canada. Several times, Montgomery told plaintiff he was going to show up at one of the jobsites and have sexual relations with her. On two occasions, Montgomery masturbated in plaintiff's presence during working hours, demanded that plaintiff watch him, asked to touch her breasts, and asked if it " 'turned her on' " to watch him. During one such incident, plaintiff ran from the office to her car, but Montgomery followed her, grabbed her arm, attempted to grab her breasts, and tried to prevent her from getting into her car.

Plaintiff told Montgomery she objected to his conduct, complained repeatedly to Manak and 3NET about Montgomery's conduct toward plaintiff and others, and demanded that Montgomery's offensive conduct be stopped. Despite assurances that the situation would be addressed and Montgomery would be fired, 3NET, Manak and Montgomery (collectively, defendants) continued to employ Montgomery and failed to take steps to prevent further similar conduct by Montgomery.

Plaintiff suffered severe emotional distress as a result of Montgomery's conduct and was forced to take a one-month leave of absence. Defendants promised plaintiff a new position upon her return. Instead, defendants retaliated against plaintiff for reporting Montgomery's sexual harassment of plaintiff and others by giving the promised position to someone else, increasing hostility toward plaintiff, and ultimately firing plaintiff under the pretext that her services were no longer needed.

The first cause of action of plaintiff's second amended complaint charges all three defendants, includes the above factual allegations, and further alleges that defendants' conduct constituted sexual harassment, retaliation and the creation of a sexually hostile environment in violation of FEHA.[1]

Montgomery demurred to the first cause of action of the second amended complaint on the ground a supervisor cannot be held personally liable for

---

[1]The second amended complaint also alleges causes of action against 3NET only for sexual discrimination in violation of FEHA and wrongful termination in violation of public policy, and a cause of action for defamation against all three defendants. These causes of action are not implicated in this proceeding.

damages for sexual harassment or retaliation under FEHA, relying primarily on analogous federal law. Respondent superior court sustained Montgomery's demurrer without leave to amend.

Plaintiff sought review of the respondent court's order in the instant petition for writ of mandate. After receiving opposition from Montgomery, we notified the parties we were considering issuing a peremptory writ in the first instance and invited further opposition. Montgomery filed further opposition. We shall order a peremptory writ of mandate to issue.

## II

Preliminarily, we dispose of Montgomery's contention that plaintiff's remedy by appeal from a final judgment is adequate and therefore that review by mandate is inappropriate. Interlocutory review of an order at the pleading stage is appropriate where, as here, a question of first impression and of statewide importance is raised, and the denial of writ review could result in a reversal and retrial. (See, e.g., *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 893-894 [157 Cal.Rptr. 693, 598 P.2d 854]; *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].)

## III

Plaintiff contends the order sustaining the demurrer was erroneous because under FEHA Montgomery is a "person" subject to liability. Plaintiff further argues Montgomery meets the definition of "employer" under FEHA, but since we agree with plaintiff's first contention, we need not, and therefore do not, reach that question. Nor is it necessary for us to determine whether Montgomery is an "agent of an employer" under FEHA. (See §§ 12926, subd. (d), 12940, subd. (h)(3)(A).) We shall consider only the individual liability of supervisors, and not that of nonsupervisory coworkers.

Under FEHA, it is an unlawful employment practice for "an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, *or any other person*" to harass an employee or applicant because of sex. (§ 12940, subd. (h)(1), italics added.) It is also an unlawful employment practice for "any employer, labor organization, employment agency, *or person*" to "discharge, expel, or otherwise discriminate" (i.e., to retaliate) against anyone who has opposed a practice forbidden by FEHA or has filed a complaint, testified or assisted in any FEHA proceeding. (§ 12940, subd. (f), italics added.) FEHA defines

"person" as "one or more *individuals*, partnerships, associations, corporations, . . . legal representatives, trustees, trustees in bankruptcy, and receivers or other fiduciaries." (§ 12925, subd. (d), italics added.)[2]

"In construing a statute 'we begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' [Citations.] 'An equally basic rule of statutory construction is, however, that courts are bound to give effect to statutes according to the usual, ordinary import of the language employed in framing them.' [Citations.] Although a court may properly rely on extrinsic aids, it should first turn to the words of the statute to determine the intent of the Legislature. [Citations.] 'If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' [Citations.]" (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].)

The language of FEHA indicates the Legislature intended to authorize administrative and civil complaints against a supervisor for harassment and retaliation. These unlawful employment practices can be committed by a "person," a term defined in FEHA to include an "individual." (§§ 12925, subd. (d), 12940, subds. (f), (h).) Consistently, the enforcement provisions

[2]Subdivisions (f) and (h) of section 12940 provide: "It shall be an unlawful employment practice . . . : [¶] . . . [¶] (f) For any employer, labor organization, employment agency, or person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part. . . . [¶] (h)(1) For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age, to harass an employee or applicant. Harassment of an employee or applicant by an employee other than an agent or supervisor shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action. An entity shall take all reasonable steps to prevent harassment from occurring. Loss of tangible job benefits shall not be necessary in order to establish harassment. [¶] (2) This subdivision is declaratory of existing law, except for the new duties imposed on employers with regard to harassment. [¶] (3)(A) For purposes of this subdivision only, 'employer' means any person regularly employing one or more persons, or any person acting as an agent of an employer, directly or indirectly, the state, or any political or civil subdivision thereof, and cities. [¶] (B) Notwithstanding subparagraph (A), for purposes of this subdivision, 'employer' does not include a religious association or corporation not organized for private profit. [¶] (C) For purposes of this subdivision, 'harassment' because of sex includes sexual harassment, gender harassment, and harassment based on pregnancy, childbirth, or related medical conditions. [¶] (4) For other types of discrimination as enumerated in subdivision (a), an employer remains as defined in subdivision (c) of Section 12926. [¶] (5) Nothing contained in this subdivision shall be construed to apply the definition of employer found in this subdivision to subdivision (a)."

of FEHA include a "person" among those who may be accused in an FEHA action.

Thus, a party aggrieved by an unlawful employment practice may file a complaint with the Department of Fair Employment and Housing (DFEH), stating the name and address of "the *person*, employer, labor organization or employment agency alleged to have committed the unlawful practice complained of . . . ." (§ 12960, italics added.) A copy of the complaint is served on the "person, employer, labor organization or employment agency." (§ 12962.) Administrative discovery proceedings may be initiated against the "person" or "individual" alleged to have committed the unlawful practice. (§§ 12963.1; 12963.2; 12963.3, subd. (a); 12963.4, subd. (a); 12963.5, subd. (a).) DFEH may attempt to eliminate the unlawful practice by conciliation (§ 12963.7), and if the complaint is resolved by agreement, DFEH may bring an injunctive action against any "person" who is in violation of the agreement (§ 12964).

If the complaint is not resolved by conciliation, DFEH may issue an accusation against "the person, employer, labor organization or employment agency accused, which shall be known as the respondent," and prosecute the accusation before the Fair Employment and Housing Commission (FEHC). (§§ 12965, subd. (a); 12967.) The FEHC may award affirmative relief against the accused, including actual damages for emotional injury, and an administrative fine in lieu of punitive damages. (§ 12970.) If the DFEH fails to issue an accusation, it must issue a "right-to-sue notice," upon request, which authorizes the aggrieved party to file a civil action in state court against "the person, employer, labor organization or employment agency named in the verified complaint." (§ 12965, subd. (b).)

We emphasize that we consider here only the personal liability under FEHA of a supervisor. Plaintiff has alleged Montgomery was her supervisor, not a nonsupervisory coworker. As to supervisors, we conclude the language of FEHA is unambiguous in imposing personal liability for harassment or retaliation in violation of FEHA.

Because of FEHA's unambiguous imposition of liability against supervisors, numerous courts have assumed, without analysis, that supervisors may be held personally liable under FEHA for sexual harassment. (See, e.g., *Carr v. Barnabey's Hotel Corp.* (1994) 23 Cal.App.4th 14 [28 Cal.Rptr.2d 127]; *Kelly-Zurian v. Wohl Shoe Co.* (1994) 22 Cal.App.4th 397 [27 Cal.Rptr.2d 457]; *Mogilefsky v. Superior Court* (1993) 20 Cal.App.4th 1409 [26 Cal.Rptr.2d 116]; *Accardi v. Superior Court* (1993) 17 Cal.App.4th 341 [21 Cal.Rptr.2d 292]; *Fisher v. San Pedro Peninsula Hospital* (1989) 214

Cal.App.3d 590 [262 Cal.Rptr. 842].) With respect to retaliation, the Court of Appeal in *Fisher* implicitly assumed that the 1987 amendment of subdivision (f) of section 12940 to add the word "person" indicates a legislative intention that coworkers can be held liable for retaliation under FEHA. (*Fisher* v. *San Pedro Peninsula Hospital, supra*, 214 Cal.App.3d at pp. 615-616.)

An interpretation of FEHA which imposes personal liability on supervisors who engage in harassment or retaliation finds support in the Legislature's statement of policy underlying FEHA. When FEHA was enacted in 1980, the legislation provided: "It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of . . . sex . . . . [¶] It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for such reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance [*sic*], and substantially and adversely affects the interest of employees, employers, and the public in general. . . . [¶] *It is the purpose of this part to provide effective remedies which will eliminate such discriminatory practices. . . .*" (§ 12920, italics added.)

The Legislature further declared the right to hold employment free of sex discrimination a civil right. (§ 12921.) Moreover, in 1984, when former subdivision (i) [now subdivision (h)] of section 12940 was amended to apply the prohibition against harassment to employers of one or more employees, the Legislature declared, "[I]t is the existing policy of the State of California to prohibit harassment and discrimination in employment on the basis of any protected classification." (Stats. 1984, ch. 1754, §§ 1-2, pp. 6403, 6405-6406.) FEHA should be construed broadly to effectuate its purposes. (§ 12993, subd. (a); *Robinson* v. *Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 243 [5 Cal.Rptr.2d 782, 825 P.2d 767].)[3]

We conclude the policy of deterring and eliminating harassment and retaliation in employment is served by holding a supervisor liable for his own acts which are violative of FEHA in accordance with the plain language of FEHA.

Finally, our interpretation finds support in the decisions of the FEHC, which have consistently held supervisors personally liable for sexual harassment as "persons" under FEHA. (See, e.g., *Dept. Fair Empl. & Hous.* v.

---

[3]Generally, under subdivision (d) of section 12926, an "employer" under FEHA includes a person employing five or more persons. But for purposes of the harassment provisions of FEHA, an employer includes a person employing one or more persons. (§ 12940, subd. (h)(3)(A); see fn. 2, *ante* p. 1211.)

*Madera County* (1990) No. 90-01, FEHC Precedential Decs. 1990-91, CEB 1, at p. 27; *Dept. Fair Empl. & Hous.* v. *Del Mar Avionics* (1985) No. 85-19, FEHC Precedential Decs. 1984-85, CEB 16, at p. 25; *Dept. Fair Empl. & Hous.* v. *La Victoria Tortilleria, Inc.* (1985) No. 85-04, FEHC Precedential Decs. 1984-85, CEB 13, at pp. 11-12.) The Legislature has vested the FEHC with power "[t]o adopt, promulgate, amend, and rescind suitable rules, regulations, and standards . . . to interpret, implement, and apply all provisions of [FEHA] . . . ." (§ 12935, subd. (a).) Although the issue is one of law, and thus ultimately for us to decide, we "give great weight to [the FEHC's] interpretation of its own regulations and the statutes under which it operates . . . ." (*Robinson* v. *Fair Employment & Housing Com.*, *supra*, 2 Cal.4th at p. 235, fn. 6; see also *Mogilefsky* v. *Superior Court*, *supra*, 20 Cal.App.4th at p. 1416, fn. 4.)[4]

## IV

Montgomery raises several arguments in support of the respondent court's decision, none of which we find persuasive.[5]

Montgomery's chief contention is that the words "or any other person" in subdivision (h)(1) of section 12940, are meant to prohibit every person in the workplace from engaging in harassment, while at the same time holding liable for harassment only the person's employer. Montgomery marshalls several reasons why this is the proper reading of legislative intent: the use of the word "any" must perforce include clients, customers and suppliers in addition to coworkers and supervisors, but this court's decision in *Capitol City Foods, Inc.* v. *Superior Court* (1992) 5 Cal.App.4th 1042 [7 Cal.Rptr.2d 418] supports the proposition that customers cannot be held personally liable under FEHA; it is the Legislature's stated policy that *employers* should establish programs to ensure that worksites are free from harassment by supervisors, agents, nonsupervisors and clients (see Stats. 1984, ch. 1754, § 1, p. 6403); and the use of the term "unlawful employment practice," implicitly includes only acts committed by employers.

Montgomery's proffered interpretation is patently inconsistent with the language of FEHA, and misinterprets our opinion in *Capitol City Foods*. We

---

[4]Montgomery argues the FEHC decisions are erroneously decided because they are based on since discredited federal decisions. He traces the genesis of the FEHC's purportedly erroneous analysis to *Dept. Fair Empl. & Hous.* v. *Bee Hive Answering Service* (1984) No. 84-16, FEHC Precedential Decs. 1984-85, CEB 8, at pages 14-16, in which the FEHC found a supervisor personally liable for his acts of sexual harassment as an "agent" of an employer. However, in *Bee Hive*, the FEHC did not address the question whether the supervisor could be held liable as a "person." In its subsequent opinions, described above, the FEHC has held supervisors liable both as agents and in their individual capacities. It is the latter conclusion with which we are here concerned and with which we agree.

[5]We discuss only those arguments that are sufficiently developed to be cognizable. (See, e.g., *People* v. *Turner* (1994) 8 Cal.4th 137, 214, fn. 19 [32 Cal.Rptr.2d 762, 878 P.2d 521].)

do not agree the term "unlawful employment practice" refers only to practices committed by employers. Indeed, section 12940 defines "unlawful employment practice" by listing qualifying conduct. Subdivisions (f) and (h) add to that list retaliation and harassment committed by "persons." As we have discussed above, the express language of FEHA authorizes administrative and civil complaints against persons who commit the above-mentioned unlawful employment practices. Montgomery's interpretation would impermissibly read the word "person" out of subdivisions (f) and (h) of section 12940. (See, e.g., *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] [an interpretation that renders statutory provisions nugatory should be avoided].)

Moreover, even if use of the word "any" in the harassment provision does not operate to impose liability on customers, it does not follow the provision should not be interpreted to impose liability on supervisors. In any event, we did not consider in *Capitol City Foods* whether customers can be held liable for workplace harassment, nor do we do so here. Our opinion in *Capitol City Foods* addresses only the liability of an employer for the acts of a supervisor. (*Capitol City Foods, Inc.* v. *Superior Court, supra*, 5 Cal.App.4th at pp. 1047-1050.)

As to Montgomery's argument regarding legislative history, the fact the Legislature has expressed its intent that employers must ensure worksites free of sexual harassment is not inconsistent with the conclusion that supervisors may be held personally liable for their own acts of sexual harassment.

Montgomery contends he cannot be an "employer," as defined in FEHA's harassment provision, because that definition is similar to the definition of employer under title VII (42 U.S.C. § 2000e et seq.), which has been interpreted as not including supervisors (*Miller* v. *Maxwell's Intern., Inc.* (9th Cir. 1993) 991 F.2d 583).[6]

Since we are not concerned here with the question whether a supervisor is an "employer" under FEHA, Montgomery's reliance on *Miller* is misplaced. ■ While as a general rule California courts have looked to federal decisions under title VII for assistance in interpreting FEHA "where appropriate" (*County of Alameda* v. *Fair Employment & Housing Com.* (1984) 153 Cal.App.3d 499, 504 [200 Cal.Rptr. 381]; *Yurick* v. *Superior Court* (1989) 209 Cal.App.3d 1116, 1121 [257 Cal.Rptr. 665], it is not appropriate to

---

[6]Under FEHA's harassment provision, " 'employer' means any person regularly employing one or more persons, or any person acting as an agent of an employer, directly or indirectly, the state, or any political or civil subdivision thereof, and cities." (§ 12940, subd. (h)(3)(A).) Under title VII's antidiscrimination provision, "employer" means "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person . . . ." (42 U.S.C. § 2000e(b).)

follow federal decisions where the distinct language of FEHA evidences a legislative intent different from that of Congress. (See *Fisher* v. *San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d at p. 606 [FEHC does not rely on title VII precedent that appears unsound or conflicts with purposes of FEHA].) As the court explained in *Miller* v. *Maxwell's Intern., Inc., supra,* title VII expressly limits liability to employers and their agents. (991 F.2d at pp. 587-588.) FEHA, however, extends liability to "any person," in addition to employers, their agents, and others. *Miller* thus provides no guidance on the question of the personal liability of supervisors under FEHA.

Montgomery contends that selected portions of the Legislative Counsel's Digest show the Legislature intended to impose liability on "entities" and not on individuals. Montgomery points out that at the time the Legislature added the harassment provision to section 12940, the Legislative Counsel summarized the bill as applying to "any entity subject to this law." (Legis. Counsel's Dig., Assem. Bill No. 1985, 6 Stats. 1982 (Reg. Sess.) Summary Dig., p. 406.) Also, at the time the Legislature amended the harassment provision to make it applicable to employers of one employee, rather than five employees, the Legislative Counsel summarized existing law as requiring the "entity" to ensure that harassment does not occur. (Legis. Counsel's Dig., Sen. Bill No. 2012, 4 Stats. 1984 (Reg. Sess.) Summary Dig., p. 660.)

Montgomery's reliance on the Legislative Counsel's Digest is unavailing. In summarizing existing law in 1984, the Legislative Counsel indicated, "Existing law also makes it an unlawful employment practice, because of the above-specified factors, to harass an employee . . . ." (Legis. Counsel's Dig., Sen. Bill No. 2012, 4 Stats. 1984 (Reg. Sess.) Summary Dig., p. 660.) Despite Montgomery's selective rendering, the Legislative Counsel's 1984 digest summary does not characterize existing law as prohibiting harassment only by entities. To the extent the Legislative Counsel may have suggested in the 1982 digest summary that the harassment provision applies only to an "entity," and to the extent "entity" might be construed as excluding a "person," the Legislative Counsel's 1982 digest summary is inconsistent with the plain language of the statute. We will not speculate that the Legislature was misled by a Legislative Counsel Digest summary that was arguably inconsistent with clear statutory language.[7]

Finally, Montgomery asserts this court must conclude that supervisors are not personally liable for sexual harassment under the recent decision in

---

[7]"Entity" is not defined in FEHA, but a common dictionary definition is "something that has objective or physical reality and distinctness of being and character." (Webster's Third New Internat. Dict. (1961) p. 758.) This definition would seem to include almost all, if not all, persons.

FEHA uses the word "entity" in the latter two sentences of subdivision (h)(1) of section 12940 in a context which suggests the Legislature meant the word to include only employers, labor organizations or training programs. But it is far from clear that the Legislative Counsel

*Jennings* v. *Marralle* (1994) 8 Cal.4th 121 [32 Cal.Rptr.2d 275, 876 P.2d 1074]. *Jennings* holds an employee may not maintain a common law cause of action for wrongful discharge in violation of the public policy against age discrimination expressed in FEHA where the employee was precluded from suing her employer under FEHA because the employer had fewer than five employees. The court explained the Legislature's express limitation of age discrimination liability to employers of five or more persons evidences an intent not to extend the fundamental policy against age discrimination to employers of a lesser number of persons. (8 Cal.4th at p. 135.)

*Jennings* does not support Montgomery's position. ▪ Unlike age discrimination, FEHA's prohibition against harassment is not limited to employers of five or more persons. Rather, FEHA expressly makes the harassment prohibition applicable to employers of "one or more persons." Moreover, the Legislature further indicated its intent to cast a broader net than it did with the age discrimination provision by making FEHA's prohibitions against harassment and retaliation apply to "persons," in addition to employers.

## V

Having complied with the procedural requirements delineated in *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893], we are authorized to issue a peremptory writ of mandate in the first instance.

Let a peremptory writ of mandate issue directing the respondent superior court to vacate its order sustaining the demurrer to the first cause of action of plaintiff's second amended complaint and to enter an order overruling the demurrer. Petitioner is to recover costs.

Davis, J., and Scotland, J., concurred.

Petitioner's application for review by the Supreme Court was denied March 30, 1995.

---

intended this meaning of the term in discussing the applicability of the harassment provision in the 1982 digest. Even so, there is nothing to suggest the Legislature was misled into believing that only such entities could be held liable for harassment, given the plain language of the first sentence of subdivision (h)(1) of section 12940 extending liability for sexual harassment to "any other person."