Filed 1/14/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROMEO MENDOZA, | |
| Plaintiff and Respondent, | G047394 |
| v. | (Super. Ct. No. 30-2011-00459349) |
| WESTERN MEDICAL CENTER SANTA ANA et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer, Judge. Reversed.

Vaughn & Vaughn, Donald A. Vaughn and Robert J. Bello for Defendants and Appellants.

C. Athena Roussos; The Lampel Firm and Eric P. Lampel for Plaintiff and Respondent.

\* \* \*

A jury voted nine to three to award $238,328 to plaintiff Romeo Mendoza, who claimed he was fired in retaliation for reporting allegations of sexual harassment. The court instructed the jury with the 2012 version of CACI No. 2430 and a special verdict form consistent therewith. Case law issued subsequent to the judgment leads us to conclude the court committed prejudicial error in doing so. (See *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203 (*Harris*); *Alamo v. Practice Management Information Corp.* (2013) 219 Cal.App.4th 466 (*Alamo*).) We reject, however, defendants' contention that they are entitled to a defense judgment as a matter of law. Accordingly, we reverse the judgment for a new trial.

FACTS

First hired as a staff nurse in 1990, Mendoza was employed at a hospital for more than 20 years.[1] By 2010, Mendoza was an intermediate-level supervisor on the overnight shift and even filled in periodically as the person in charge at the hospital ("House Supervisor"). By all accounts, and as reflected by his long term of service and march up the ranks of authority, Mendoza was an excellent nurse. As defense counsel stated during a pretrial hearing, "we will stipulate he was a fine employee, he was performing his job competently, he received awards, he received commendations. . . . This is not a case where Mr. Mendoza was terminated because he performed his job in a substandard manner[,] because he made medical errors or anything of that nature."

In late October 2010, Mendoza reported to a House Supervisor that he was being sexually harassed by Del Erdmann, a per diem House Supervisor hired by

---

[1] Since May 2005 and at the time of Mendoza's firing, the hospital was operated by defendants Western Medical Center Santa Ana and its parent company, Integrated Healthcare Holdings, Inc.

defendants in April 2010. Whenever Mendoza and Erdmann worked the same shift, Erdmann was Mendoza's supervisor. After the complaint was passed up the chain of command, the matter was referred to the human resources department and an investigation ensued.

Mendoza and Erdmann are both gay men. The gist of Mendoza's accusation was that Erdmann, on numerous occasions, harassed Mendoza on the job with inappropriate comments (e.g., "I know you want me in your ass"), physical contact (e.g., Erdmann blowing air in Mendoza's ear), and lewd displays (e.g., Erdmann showing his genitals to Mendoza). According to Mendoza's testimony, this behavior began in August 2010 with words and culminated in October with Erdmann exposing himself. Mendoza denied he consented to Erdmann's behavior. Mendoza denied he had ever willingly engaged in flirtatious or lewd conduct with Erdmann. Mendoza told Erdmann to stop. Mendoza admitted that he violated defendants' policy by not immediately reporting Erdmann's behavior. Mendoza ultimately complained about Erdmann's conduct after a second incident in which Erdmann exposed himself and said, "I know you want this in your ass."

Erdmann, on the other hand, testified (and stated during defendants' investigation) that Mendoza consented to Erdmann's conduct and participated in other mutual interactions (e.g., Mendoza would bend over provocatively in front of Erdmann, Mendoza requested that Erdmann display his genitals, Mendoza assisted Erdmann in exposing his genitals). Indeed, Erdmann claimed he was a reluctant participant in conduct initiated by Mendoza. At both the investigation stage and at trial, Mendoza and Erdmann were the only two individuals identified with personal knowledge of what occurred between them at the hospital.

Mendoza's expert witness took issue with the quality of the investigation process. Defendants did not prepare a formal investigation plan. Defendants did not take written statements from Mendoza or Erdmann. Defendants did not immediately

3

interview Erdmann, and suspended the investigation while Mendoza missed work for several weeks following a bicycle accident. When Mendoza returned to work, Mendoza and Erdmann were interviewed simultaneously rather than separately. Defendants did not interview anyone other than Mendoza and Erdmann (such as coworkers who might provide insights as to the credibility of the two men). The individual charged with completing the investigation was not a trained human resources employee, but was instead the supervisor of Erdmann and Mendoza. On cross-examination, Mendoza's expert conceded he was unaware of any specific information that would have been uncovered had defendants conducted a proper (in the expert's view) investigation. But a subsequent witness (an employee who conducted Erdmann's orientation) testified that he noticed Erdmann making sexual innuendos during the orientation.

Upon the completion of the investigation, defendants fired both Mendoza and Erdmann on December 14, 2010. The written notice of termination provided by defendants to Mendoza cited "unprofessional conduct" as the reason for Mendoza's dismissal. According to their testimony, the individuals participating in the decision concluded that both Mendoza and Erdmann were complicit in inappropriate and unprofessional behavior. There is a progressive discipline system in place at the hospital, subject to which an employee could be verbally warned, warned in writing, suspended, or terminated. Defendants claim to have considered but rejected a lesser punishment for Mendoza.

Mendoza sued defendants for wrongful termination in violation of public policy.[2] Answering a special verdict form, the jury found defendants liable for wrongful

_____

[2] Actually, Mendoza's complaint featured eight causes of action, but none of his other causes of action are relevant to this appeal. Two causes of action were dismissed as a result of a motion for summary adjudication (breach of contract and breach of implied covenant of good faith and fair dealing); three causes of action were voluntarily dismissed with prejudice during trial (age discrimination in violation of the California Fair Employment and Housing Act (FEHA), sexual orientation discrimination

4

termination in violation of public policy. The jury determined that Mendoza suffered $93,328 in past economic loss and $145,000 in past emotional distress. The court subsequently entered judgment in favor of Mendoza and against defendants in the total amount of $238,328, plus interest from the date of judgment and costs. Defendants filed a timely notice of appeal.

DISCUSSION

"[W]hen an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions." (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170.) "To support a common law wrongful discharge claim, the public policy 'must be: (1) delineated in either constitutional or statutory provisions; (2) "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental.'" (*Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 642.)

With one exception, the elements of Mendoza's claim are undisputed by the parties on appeal. Mendoza was discharged by his ex-employers, defendants, after Mendoza accused a supervisor, Erdmann, of sexual harassment. The public policy invoked by Mendoza supports his claim in the abstract (i.e., a common law wrongful termination action may be based on the firing of an employee because the employee

---

in violation of FEHA, and unfair business practices pursuant to Bus. & Prof. Code, § 17200); one cause of action was dismissed pursuant to a nonsuit motion (negligent infliction of emotional distress); and the jury rejected one cause of action (intentional infliction of emotional distress).

reports sexual harassment to the employer).[3] Mendoza suffered harm as a result of his termination (and the amount of damages awarded by the jury is not challenged on appeal).

The crux of the case is causation, a slippery concept in tort law generally and employment law in particular. (See, e.g., Clarke, *A Better Route Through the Swamp: Causal Coherence in Disparate Treatment Doctrine* (2013) 65 Rutgers L.Rev. 723; Katz, *The Fundamental Incoherence of Title VII: Making Sense of Causation in Disparate Treatment Law* (2006) 94 Geo. L.J. 489; *Univ. of Tex. Southwestern Med. Center v. Nassar* (June 24, 2013, No. 12-484) 2013 U.S. Lexis 4704 [five to four decision examining causation element in federal retaliation claims].)

Mendoza claims his *report* of sexual harassment caused defendants to fire him. In other words, defendants retaliated against Mendoza for accusing his superior (Erdmann) of sexual harassment. On the other hand, defendants cite their belief that Mendoza willingly participated in sexual misconduct on the job as their motivation for firing Mendoza. From defendants' perspective, Mendoza's report only "caused" his firing in the sense that it alerted defendants to Mendoza's misconduct. Defendants concede it is against public policy to fire employees because they report actual sexual harassment. But defendants posit it is not against public policy for employers to fire employees after the employer determines in good faith that the employee actually

---

[3]    Government Code section 12940, subdivision (h), specifically proscribes the "discharge" of "any person . . . because the person has filed a complaint . . . under this part." A complaint "under this part" would appear to include sexual harassment. (*Id*., subd. (j)(1); *Joaquin v. City of Los Angeles* (2012) 202 Cal.App.4th 1207, 1217 (*Joaquin*).) Of course, "FEHA does not supplant other state laws, including claims under the common law, relating to employment discrimination [and] sex discrimination in employment may support a claim of tortious discharge in contravention of public policy." (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 70-71, 73-82; see also Cal. Const., art. I, § 8 ["A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin"].)

6

participated in sexual misconduct on the job. (See *Joaquin*, *supra*, 202 Cal.App.4th at p. 1226 ["an employer may discipline or terminate an employee for making false charges, even where the subject matter of those charges is an allegation of sexual harassment"].)

On appeal, defendants attack the judgment by pointing to alleged instructional error with regard to the element of causation. Defendants also assert there is insufficient evidence in the record to support the jury's causation findings.

*Prejudicial Instructional Error Occurred Requiring Reversal*

Initially, defendants obtained a very favorable jury instruction and special verdict form on the issue of causation. The jury was instructed as follows: "3. That Romeo Mendoza's report of sexual harassment by Del Erdmann was *the* motivating reason for Romeo Mendoza's discharge." (Italics added.) This instruction included a slight (but important) modification of the 2012 version of CACI No. 2430 ("*the* motivating reason" rather than "*a* motivating reason"). The special verdict form submitted to the jury was even starker: "Was Romeo Mendoza's report of sexual harassment by Del Erdman *the reason* for [defendants'] decision to discharge Romeo Mendoza." (Italics added.) This differed from the special verdict language used in the 2012 version of CACI No. VF-2406 ("a motivating reason"). A jury tasked with deciding whether the report of sexual harassment was "the motivating reason" or "the reason" might logically conclude that this element could only be satisfied if there were only one reason motivating the decision to fire Mendoza.

In the midst of its deliberations, the jury submitted the following question about the causation interrogatory on the special verdict form: "Does this question . . . imply that the report was the only reason for the termination? Does this mean they retaliated?" Over defendants' objection, the court submitted a written response to the jury's inquiry: "Pursuant to the Jury Instruction . . . , the plaintiff must prove that his report of Sexual Harassment was a motivating reason for his discharge. (That instruction

7

incorrectly refers to 'the motivating reason'. It should say 'a motivating reason'). [¶] Please consider this answer in any vote or deliberations." The jury marked out the word "the" and inserted the word "a" on both the relevant jury instruction and the special verdict form.

Defense counsel opposed the court's response to the jury on the grounds that the initial instruction and special verdict form were correct. Defense counsel added that "the clarification would, at a minimum, have to say, 'a primary reason. A substantial motivating reason.'" The court responded, "[i]f CACI is right, then we are right."

The 2012 versions of CACI Nos. 2430 and VF-2406 were not right, at least in the view of the Judicial Council in 2013. Effective June 2013, CACI No. 2430 provides the following with regard to causation: "That [*insert alleged violation of public policy . . .* ] was a substantial motivating reason for [*name of plaintiff*]'s discharge." The corresponding special verdict form also inserted updated language ("a substantial motivating reason"). (CACI No. VF-2406.)

These changes were inspired by *Harris*, *supra*, 56 Cal.4th 203, a February 2013 case in which the plaintiff alleged her employer fired her because she was pregnant. Our Supreme Court held that CACI No. 2500 (the FEHA disparate treatment/discrimination instruction) did not accurately state the law in calling for the jury "to determine whether discrimination was 'a motivating factor/reason' for Harris's termination. . . . [T]he jury should instead determine whether discrimination was 'a substantial motivating factor/reason.'" (*Harris*, *supra*, 56 Cal.4th at p. 232.) "Requiring the plaintiff to show that discrimination was a *substantial* motivating factor, rather than simply *a* motivating factor, more effectively ensures that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision. At the same time, . . . proof that discrimination was a *substantial* factor in an employment decision triggers the deterrent purpose of the FEHA and thus exposes the employer to liability, even if other factors would have led the employer to

8

make the same decision at the time." (*Ibid*.) *Harris* makes clear (at least with regard to CACI No. 2500) that the initial instruction in this case ("the motivating reason") and the court's amended instruction ("a motivating reason") were incorrect.

Even more recently, an appellate court held "that the trial court prejudicially erred in instructing the jury with the former versions of CACI Nos. 2430, 2500, 2505, and 2507 because the proper standard of causation in a FEHA discrimination or retaliation claim is not 'a motivating reason,' as used in the [former] CACI instructions, but rather 'a substantial motivating' reason, as set forth in *Harris*." (*Alamo*, *supra*, 219 Cal.App.4th at pp. 469-470.) Following her termination, the *Alamo* plaintiff (who had recently taken a "pregnancy-related leave of absence") sued under a variety of theories, including wrongful termination in violation of public policy. (*Id*. at p. 470.) The *Alamo* court rejected the contention "that a jury in an employment discrimination case would not draw any meaningful distinction between 'a motivating reason' and 'a substantial motivating reason' in deciding whether there was unlawful discrimination [because] the Supreme Court reached a contrary conclusion in *Harris*." (*Id*. at p. 479.)

The directions for use included with the current version of CACI No. 2430 state that "[w]hether the FEHA standard [as explicated in *Harris*] applies to cases alleging a violation of public policy has not been addressed by the courts." But the *Alamo* case, issued in August 2013, has answered this question in the affirmative. We agree with *Alamo*. It would be nonsensical to provide a different standard of causation in FEHA cases and common law tort cases based on public policies encompassed by FEHA. Mendoza tries to distinguish the instant case from *Alamo* by noting that he abandoned his statutory FEHA claims before the case was submitted to the jury. This is a distinction without a difference for purposes of crafting appropriate jury instructions.

9

It is therefore clear that the court erred in its instruction of the jury. The court should have instructed the jury to determine whether Mendoza's report of sexual harassment was a substantial motivating reason for Mendoza's discharge. Following *Harris* and *Alamo*, we conclude this error was prejudicial. The jury's verdict in favor of Mendoza was extremely close (a nine to three vote). No other instructions provided to the jury could have cured the erroneous instruction with regard to the contested element. Viewing the evidence "in the light most favorable" to defendants (*Huffman v. Interstate Brands Corp.* (2004) 121 Cal.App.4th 679, 692), there is a reasonable probability that the instructional error prejudicially affected the verdict.

Defendants also contend the jury instructions and special verdict form were in error because it "may have made a plaintiff's verdict inevitable" by allowing the jury to infer retaliatory intent based on the causal finding that Mendoza's "report of sexual harassment was a motivating reason for the . . . decision to terminate him." (*Joaquin*, *supra*, 202 Cal.App.4th at p. 1231; see com. to CACI No. 2505 [noting criticism of instruction based on perceived lack of element requiring retaliatory intent].) In other words, it is reasonable to infer in this case that, regardless of whether the jury believed the defendants' stated reasons for Mendoza's firing, his firing was caused in some sense by the report of sexual harassment. Had Mendoza not said anything, there is nothing in the record to suggest defendants would have found out about the incidents involving Mendoza and Erdmann. "[I]n cases such as *Joaquin* that involve allegations of a prohibited motivating reason (based on a report of sexual harassment) and a permitted motivating reason (based on a good faith belief that the report was falsified), the instruction may need to be modified to make it clear that plaintiff must prove that defendant acted based on the *prohibited* motivating reason and not the *permitted* motivating reason." (Com. to CACI No. 2505.)

10

We see no reason to weigh in on the issue. We have already determined that the court committed prejudicial error requiring reversal of the judgment as set forth above. On remand, defendants will have an opportunity to request jury instructions and a special verdict form addressing the potential misunderstanding described in *Joaquin* before the new trial goes forward.

*Substantial Evidence Supports the Judgment*

Defendants also contend there is insufficient evidence in the record to support the jury's conclusion that defendants fired Mendoza in violation of public policy. Defendants posit they would be entitled to entry of judgment in their favor (rather than a new trial) if the jury's retaliation finding is not supported by substantial evidence. Thus, we entertain this second issue even though we have already concluded that defendants are entitled to a reversal because of instructional error.

"On review, we apply the substantial evidence test to the jury's verdict, . . . reading the record in the light most advantageous to the plaintiff. [Citations.] Actions for retaliation are 'inherently fact-driven'; it is the jury, not the court, that is charged with determining the facts." (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 299.) We must "accept as true all the evidence and reasonable inferences therefrom that tend to establish the correctness of the [jury's] findings and decision, and resolve every conflict in favor of the judgment." (*Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, 369.)

In cases like the instant one, "the ultimate question for the fact finder is whether the employer's stated reason for discipline . . . was pretextual or whether there is other evidence that, 'as a whole supports a reasoned inference that the challenged action was the product of discriminatory or retaliatory animus.'" (*Joaquin*, *supra*, 202 Cal.App.4th at p. 1226.) Defendants claim they fired Mendoza solely because they believed Mendoza willingly engaged in flirtatious and lewd behavior with a supervisor

11

over the course of several months, and not as a result of any retaliatory animus. Defendants assert there is no evidence to establish an inference that they acted in bad faith when they decided to fire Mendoza. (Cf. *Cotran v. Rollins Hudig Hall Internat., Inc.* (1998) 17 Cal.4th 93, 95, 107-109 [proper inquiry for jury (at least in a case in which the employee sues for breach of an implied contract not to be dismissed except for good cause) is whether employer acted in good faith after appropriate investigation, not whether employee actually committed the misconduct cited as the reason for dismissal].)

As an initial matter, defendants cite their simultaneous termination of Erdmann as conclusive proof of defendants' good faith. We disagree with the proposition that the simultaneous firing of Erdmann necessarily entitles defendants to judgment as a matter of law. Obviously, the facts here are more complicated for Mendoza than a stereotypical case in which a boss fires his or her employee because the employee accuses the boss (or another favored supervisor who is retained) of sexual harassment. (See, e.g., *Page v. Superior Court* (1995) 31 Cal.App.4th 1206, 1208-1210 [supervisor accused of harassment and retaliation was vice-president and partial owner of company].) Retaliation, if it occurred, was not motivated out of a desire to protect Erdmann or punish Mendoza for harming Erdmann as such. But the protection of a *specific* supervisor is not the only logical reason an employer would retaliate against an employee reporting sexual harassment. (See *Delashmutt v. Wis-Pak Plastics, Inc.* (N.D.Iowa 1998) 990 F.Supp. 689, 698-702 [denying summary judgment motion in retaliation case even though employer reacted to employee's complaint of sexual harassment by firing alleged harasser]; George, *Revenge* (2008) 83 Tul. L.Rev. 439, 440 ["Even if the employer believes the complaint has merit, he may still resent the employee for 'making trouble'"]; Estlund, *The Changing Work Place*: *Wrongful Discharge Protections in an At-Will World* (1996) 74 Tex. L.Rev. 1655, 1684 ["both the accused and the accuser are largely at the mercy of the employer, who may be moved by whim or sexism or favoritism or fear of litigation or a rational assessment of the costs and benefits

12

of various responses"].)  Perhaps defendants were substantially motivated by a desire to rid themselves of an individual who had become problematic by reason of his reporting sexual harassment, without regard to the accuracy of his accusations.  (See *Delashmutt v. Wis-Pak Plastics, Inc.*, *supra*, 990 F.Supp. at p. 702, fn. 8 ["It is conceivable that an employer could rid itself of a short-term problem by firing an alleged harasser, then attempt to rid itself of the long-term problem of the complaining person if it perceived that person to have the potential to be a chronic complainer"].)

There is sufficient evidence in the record for the jury to conclude that a substantial motivating reason for Mendoza's firing was his report of sexual harassment. Defendants terminated an excellent, long term employee soon after he reported sexual harassment by a recent hire, Erdmann.  (*Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1235, disapproved on another ground in *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1173-1174 ["Close proximity in time of an adverse action to an employee's resistance or opposition to unlawful conduct is often strong evidence of a retaliatory motive"]; *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1435 [affirming jury verdict, in part based on prior outstanding job performance].)  Accepting Mendoza's testimony as true (as we must for this purpose), Mendoza was not complicit in sexual misconduct at the hospital.  Instead, Erdmann harassed Mendoza while Erdmann was acting as Mendoza's supervisor at the hospital.  After being confronted by defendants, Erdmann confirmed part of Mendoza's story (i.e., that improper activity occurred) but accused Mendoza of being the instigator and willing participant.  With nothing to go on besides their respective statements, defendants claim they chose to believe Erdmann's characterization of the incidents rather than Mendoza's complaint.

Importantly, in combination with the foregoing facts, Mendoza's expert witness testified that there were numerous shortcomings in the investigation conducted by defendants following Mendoza's complaint. (See *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 278-283 [inadequate investigation is evidence of pretext].) The lack of a rigorous investigation by defendants is evidence suggesting that defendants did not value the discovery of the truth so much as a way to clean up the mess that was uncovered when Mendoza made his complaint. Defendants point to the expert's concession that additional facts would not necessarily have been discovered had the alleged flaws in the investigation been addressed. But the question for the jury was defendants' subjective motivation in deciding to fire Mendoza, not whether defendants actually had all available material before them. Moreover, a more thorough investigation might have disclosed additional character and credibility evidence for defendants to consider before making their decision.

In sum, substantial evidence supports the judgment. Thus, on remand, it will be up to a jury to decide whether the expert's characterization of the investigation is accurate and whether to infer from that characterization that defendants had retaliatory animus. Similarly, it will be up to a jury to determine whether defendants' termination of Mendoza was substantially motivated by improper considerations.[4]

---

[4] At oral argument, defense counsel asked (perhaps rhetorically) just what employers were expected to do when faced with a scenario in which two employees provide conflicting accounts of inappropriate conduct. Our answer is simple: employers should conduct a thorough investigation and make a good faith decision based on the results of the investigation. Here, the jury found this did not occur. Hopefully, this opinion will disabuse employers of the notion that liability (or a jury trial) can be avoided by simply firing every employee involved in the dispute.

## DISPOSITION

The judgment is reversed.  In the interests of justice, the parties shall bear their own costs incurred on appeal.


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.