Filed 7/30/15  P. v. Patterson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>LLOYD TARIAL PATTERSON,<br><br>　　　Defendant and Appellant. | H039022<br>(Santa Clara County<br>　Super. Ct. No. F1139615) |

Defendant Lloyd Tarial Patterson appeals from a grand theft conviction.  On appeal, defendant asserts that the trial court erred in denying his motion to withdraw his no contest plea.  As set forth below, we will affirm.

### FACTUAL BACKGROUND

James Currier, the victim of the theft, owns a company called Flowstar.  Flowstar has a Gilroy warehouse.  Currier and defendant worked together to start a homeless shelter called the Gilroy Compassion Center (hereafter the "GCC").  The GCC is adjacent to the Flowstar warehouse.

On August 23, 2011, Currier informed the Gilroy Police Department that numerous metal items had been stolen from the Flowstar warehouse.  Among the stolen items were 85 metal filters that weighed a total of approximately 3,000 pounds.  The total value of the stolen items was $122,047.30.  Currier learned that defendant had taken the

items and recycled them for money. A man named Darren Baker helped defendant transport the items to a recycling center.

Approximately three months before the theft, Currier gave defendant permission to remove old electrical wiring from the Flowstar warehouse. Currier did not give defendant permission to remove anything else from the warehouse.

At the time of the theft, defendant did not have permission to be in the Flowstar warehouse. According to Jan Bernstein-Chargin, the board chair of the GCC, Currier told everyone present at a GCC meeting that they could not go into the Flowstar warehouse.

## PROCEDURAL BACKGROUND

On August 24, 2011, the Santa Clara County District Attorney filed a felony complaint charging defendant with grand theft (Pen. Code, §§ 484/487, subd. (a)).[1] The complaint alleged that the value of the taken property exceeded $65,000 (§ 12022.6, subd. (a)(1)). The complaint additionally alleged that defendant had one prior strike conviction (§§ 667, subds. (b)-(i)/1170.12) and had served four prior prison terms (§ 667.5, subd. (b)).

At a hearing on September 27, 2011, the trial court granted defendant's *Faretta*[2] motion for self-representation and relieved defendant's appointed counsel. At that same hearing, the prosecutor stated her intention to file an amended complaint that alleged a second prior strike conviction. Defendant stated that he wanted to "plead as charged" when the prosecutor filed the amended complaint. He said that he wanted to plead guilty to grand theft and "admit both strike priors and admit four prison priors, admit . . . over sixty thousand dollars enhancement." Defendant explained that his "legal strategy" was

---

[1] Subsequent unspecified statutory references are to the Penal Code.

[2] *Faretta v. California* (1975) 422 U.S. 806.

2

to enter a guilty plea at the "earliest possible" time and then "move on to" a *Romero*[3] motion to vacate his prior strike convictions. Defendant emphasized: "It is my intentions [*sic*] to knowingly, clearly, intelligently, and willingly change my plea to guilty." After questioning from the trial court, defendant affirmed that his strategy of a guilty plea and a *Romero* motion was "the best thing" for him to do.

On October 7, 2011, the Santa Clara County District Attorney filed an amended felony complaint. In addition to the grand theft charge and all the allegations in the original complaint, the amended complaint alleged a second prior strike conviction (§§ 667, subds. (b)-(i)/1170.12).

At a hearing on October 28, 2011, defendant and the prosecutor informed the trial court that they had reached a plea agreement. Pursuant to the agreement, defendant pleaded no contest to grand theft (§ 487, subd. (a)), and he admitted that he had two prior strike convictions (§§ 667, subds. (b)-(i)/1170.12) and had served four prior prison terms (§ 667.5, subd. (b)). In exchange for defendant's plea, the prosecutor dismissed the allegation that the value of the taken property exceeded $65,000. When defendant entered his plea, he said that he "never had the intention of . . . contesting" the grand theft charge. He emphasized that he had made his "desire known early on" that he "wanted to resolve the grand-theft matter as soon as possible." He explained that he made it "clear from the beginning" that the "best resolution" was to enter a no contest plea and proceed with a *Romero* motion. The trial court noted that defendant had "always said" that he wanted to plead guilty, and that defendant "indicated he wanted to plead guilty" as early as the arraignment on the original complaint.

On January 18, 2012, defendant filed a motion to withdraw his plea pursuant to section 1018. He filed a supplemental motion to withdraw his plea on June 5, 2012. The

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

trial court held a series of evidentiary hearings on the plea withdrawal motion. On September 21, 2012, the trial court denied defendant's motion to withdraw his plea. The trial court explained that defendant had failed to establish good cause for withdrawal of his no contest plea. The trial court emphasized that, before defendant entered his plea, he always said his strategy was to plead guilty or no contest and focus on a *Romero* motion to vacate his prior strike convictions.

At the hearing on September 21, 2012, the trial court granted the prosecutor's motion to dismiss one of the prior strike allegations that defendant had previously admitted. On October 26, 2012, the trial court denied defendant's *Romero* motion, and it sentenced defendant to a prison term of five years eight months.

## DISCUSSION

### *Defendant's Arguments*

Defendant contends that the judgment must be reversed because the trial court abused its discretion in denying his plea withdrawal motion. On appeal, defendant renews three arguments that he raised in the trial court.

First, defendant asserts that he was entitled to withdraw his plea because, when he was represented by counsel, that attorney failed to advise him of two items of evidence and consequently misled him about the state of the evidence. Second, defendant contends that he was entitled to withdraw his plea because he was not aware of Currier's criminal convictions and Baker's criminal convictions at the time he entered his plea. Third, defendant argues that he was entitled to withdraw his plea because two pieces of newly discovered evidence "cast the case in a dramatically different light."

As explained below, defendant's arguments are not persuasive. Contrary to defendant's assertions, the trial court did not abuse its discretion in denying the plea withdrawal motion.

4

*Standard of Review*

"The decision whether to allow a defendant to withdraw a guilty or no contest plea is discretionary, and an appellate court will not disturb it absent a showing the trial court has abused its discretion." (*People v. Mickens* (1995) 38 Cal.App.4th 1557, 1561.)

*Legal Principles*

"A trial court may allow a defendant to withdraw his or her guilty or no contest plea under section 1018 for good cause shown by clear and convincing evidence." (*People v. Archer* (2015) 230 Cal.App.4th 693, 702.) "To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress." (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416 (*Breslin*).) "The defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake." (*Ibid.*)

"All decisions to plead guilty are heavily influenced by difficult questions as to the strength of the prosecution's case and the likelihood of securing leniency." (*Breslin, supra,* 205 Cal.App.4th at p. 1417.) "Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time." (*Brady v. United States* (1970) 397 U.S. 742, 756-757 (*Brady*); see also *Breslin, supra,* 205 Cal.App.4th at p. 1417.) "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." (*Brady, supra,* 397 U.S. at p. 757; see also *Breslin, supra,* 205 Cal.App.4th at p. 1417.)

*The Trial Court Did Not Abuse its Discretion*

We now turn to defendant's arguments. Defendant has failed to show the trial court abused its discretion in concluding that good cause for plea withdrawal did not exist.

Defendant's first argument is not persuasive. Defendant contends that he had good cause to withdraw his no contest plea because, before he was granted self-representation, his appointed counsel failed to advise him of the following pieces of evidence: 1) Currier admitted he had "relapsed" into substance abuse in June of 2011; and 2) Bernstein-Chargin stated that defendant missed many GCC meetings.[4] This argument is meritless. Defendant concedes that he was aware of Currier's relapse into substance abuse, and defendant was certainly aware of his frequency of attendance at GCC meetings. Defendant has thus failed to show that he was operating under mistake or ignorance at the time he entered his no contest plea. Given that defendant was aware of Currier's substance abuse and his own attendance at GCC meetings, defendant's assertion that he was "misled about the evidence" is unconvincing.[5]

---

[4] Defendant contends that Currier's statement was important because it could have been used to impeach Currier at trial. Defendant contends that Bernstein-Chargin's statement suggested that he was not present when Currier prohibited GCC members from going into the Flowstar warehouse, which in turn suggested that he was unaware that he did not have permission to take items from the Flowstar warehouse.

[5] In a brief one-paragraph argument, defendant asserts that counsel rendered ineffective assistance in failing to advise him of Currier's statement and Bernstein-Chargin's statement. "We discuss only those arguments that are sufficiently developed to be cognizable." (*Page v. Superior Court* (1995) 31 Cal.App.4th 1206, 1214, fn. 5.) Thus, given the brevity of defendant's ineffective assistance argument, we are not obligated to discuss it. Nonetheless, we note that defendant cannot prevail on his claim of ineffective assistance of counsel. To establish ineffective assistance, defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (*Hill v. Lockhart* (1985) 474 U.S. 52, 59, fn. omitted.) Given that defendant was aware of Currier's substance

6

Defendant's second argument is also meritless. The circumstance that defendant was unaware that two potential prosecution witnesses, Currier and Baker, had criminal convictions did not constitute good cause for withdrawal of his plea. Prosecutors are not required to disclose impeachment evidence prior to entering a plea agreement with a criminal defendant. (*U.S. v. Ruiz* (2002) 536 U.S. 622, 633 (*Ruiz*); *In re Miranda* (2008) 43 Cal.4th 541, 581.) This is so because "impeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary." (*Ruiz, supra,* 536 U.S. at p. 628, italics omitted.) The criminal convictions of Currier and Baker were relevant only for impeachment purposes, and those convictions thus had no bearing on whether defendant was exercising his free judgment at the time he entered his plea. Defendant's ignorance of the convictions therefore did not constitute good cause for withdrawal of his no contest plea.

Defendant's third argument is also unconvincing. Contrary to defendant's assertion, two pieces of newly discovered evidence did not constitute good cause for withdrawal of his plea.

The first piece of "newly discovered" evidence that defendant proffers is Bernstein-Chargin's statement that she was a party to a conversation in which Currier told defendant that defendant could take items from the Flowstar warehouse. Given that defendant was present at the conversation that Bernstein-Chargin described, he was surely aware of Bernstein-Chargin's potential testimony, and her statement cannot be considered newly discovered evidence warranting withdrawal of the no contest plea.

---

abuse and his own attendance at GCC meetings, we cannot conclude that defendant would have proceeded to trial if counsel had advised him of Currier's statement and Bernstein-Chargin's statement. Defendant's repeated statements regarding his desire to enter a no contest plea provide further support for our conclusion that defendant would not have insisted on a trial if counsel had advised him of Currier's statement and Bernstein-Chargin's statement.

The second piece of newly discovered evidence that defendant proffers is Baker's statement to police that defendant had "full run" of the Flowstar warehouse and was working "arm-in-arm" with Currier. Defendant contends that this new evidence was crucial because it contradicted a police report that noted that Baker said defendant had permission to remove only old wiring from the Flowstar warehouse. We are not convinced of the significance of the newly discovered statement of Baker. Baker's assertion that defendant was working "arm-in-arm" with Currier did not demonstrate that defendant had permission to take items from the Flowstar warehouse. Baker's assertion that defendant had "full run" of the Flowstar warehouse was ambiguous. Although the phrase "full run" suggested that defendant had extensive access to the Flowstar warehouse, the phrase in no way established that defendant had permission to take items valued at over $100,000. Thus, we are not persuaded by defendant's contention that the newly discovered statement of Baker "cast the case in a dramatically different light," and we cannot conclude that defendant's ignorance of Baker's statement constituted good cause for withdrawal of his plea. (See *Breslin, supra,* 205 Cal.App.4th at p. 1417 [although the prosecution's case might have been slightly weaker than it appeared when the defendant pleaded guilty, this does not invalidate the plea].)

Finally, defendant briefly asserts that the "cumulative impact" of all the factors described in his three arguments constituted good cause for withdrawal of his plea. As explained above, defendant failed to show that he was operating under any mistakes that overcame the exercise of his free judgment in entering his plea. Moreover, defendant ignores the fact that, to prevail on his plea withdrawal motion, he had to show that he "would not have accepted the plea bargain had it not been for the mistake." (*Breslin, supra,* 205 Cal.App.4th at p. 1416.) Such a showing is not possible here. The record shows that defendant had a very strong desire to enter his no contest plea. He frequently and consistently informed the trial court that he wanted to enter a guilty or no co contest

8

plea. He repeatedly asserted that the best legal strategy was to enter a no contest plea "as soon as possible" and to focus on a *Romero* motion to vacate his prior strike convictions. Given defendant's adamancy about entering a no contest plea, we do not believe he would have proceeded to trial if he had been cognizant of all the factors he describes in his arguments. We therefore cannot find an abuse of discretion in the denial of defendant's plea withdrawal motion. (See generally *People v. Nance* (1991) 1 Cal.App.4th 1453, 1456 [a plea "may not be withdrawn simply because the defendant has changed his mind"].)

In summary, for the foregoing reasons, we conclude that the trial court acted within its discretion in ruling that good cause for plea withdrawal did not exist. Defendant has failed to show an abuse of discretion in the denial of his plea withdrawal motion.

**DISPOSITION**

The judgment is affirmed.

_____
                                           RUSHING, P. J.

WE CONCUR:

_____
          ELIA, J.

_____
          WALSH, J.[*]

*People v. Patterson*
**H039022**

---

[*] Judge of the Santa Clara County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.